IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| DENEEN TIMM,<br>　　　Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>　　　Defendant. | Case No. 4:17-cv-04007-JEH |

## Order and Opinion

Now before the Court is the Plaintiff Deneen Timm's Motion for Summary Judgment (Doc. 10), the Commissioner's Motion for Summary Affirmance (Doc. 13), and the Plaintiff's Reply (Doc. 15).[1] For the reasons stated herein, the Court DENIES the Plaintiff's Motion for Summary Judgment and GRANTS the Defendant's Motion for Summary Affirmance.[2]

**I**

On August 15, 2013, Timm filed an application for Disability Insurance Benefits (DIB) alleging disability beginning on April 5, 2010 (subsequently amended to March 13, 2013). Her claim was denied initially on December 10, 2013 and was denied upon reconsideration on July 7, 2014. On August 29, 2014, Timm filed a request for hearing concerning her application for DIB. A hearing was held before the Honorable John M. Wood (ALJ) on November 12, 2015. At the hearing, Timm was represented by counsel, and Timm, a Vocational Expert (VE), and

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 8, 9).
[2] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears as (Doc. 5) on the docket.

Timm's husband testified. Following the hearing, Timm's claim was denied on January 27, 2016. Her request for review by the Appeals Council was denied on November 10, 2016, making the ALJ's Decision the final decision of the Commissioner. Timm filed the instant civil action seeking review of the ALJ's Decision on January 10, 2017.

## II

At the time she applied for benefits, Timm was 55 years old living in Taylor Ridge, Illinois with her husband Douglas Timm (Douglas). On her Form SSA-3368, Timm listed all of the physical and mental conditions that limited her ability to work as follows: stage 3 chronic kidney disease; osteoarthritis; fibromyalgia; cardiac syndrome X; tremors from fibromyalgia; depression; and osteoarthritis. AR 217.

At the hearing, Timm testified that she lived in a one level house with her husband. She testified that she had to shower because it was extremely hard for her to get into and out of the bathtub, and she had difficulty with buttons so she typically did not wear things with buttons. Her daily routine included folding laundry (after her husband brought it from the basement), sometimes cooking using either the Crockpot or an electric skillet, and occasionally loading and unloading the dishwasher. Timm stated that her husband did the overall cleaning in the house, and she had not been involved in cleaning the house for a couple of years. Timm explained that her lower back and hip pain were getting so bad that she stopped doing any of the cleaning. She went grocery shopping with her husband. She liked to read while at home. She did not go visit family or friends as they usually came to see her. She drove a car a couple times a month.

She previously worked as a caregiver. At the time Timm resigned from that position, she did so because she did not think she could do it anymore given the combination of her own problems and those of the man for whom she was caring.

2

Timm also testified that she did not feel she could work at present because she experienced a lot of pain throughout her body, especially in her lower right back and right hip. She said the pain in those areas had been present for quite a while and was getting worse. Timm stated that she saw Dr. Michael Dolphin, D.O. for her low back and hip pain and one of his assistants discussed surgery to fix that pain. Timm further stated, "But at the same time, I had just had the first hernia surgery and was recovering from that. So --." AR 62.

She said her hands had a lot of pain as well with grasping and writing, and the pain had lately settled into her right shoulder making it hard for her to raise her right arm. Timm explained that her left hand surgery (joint removal surgery) did not turn out the way it was described, and, therefore, she was afraid to have her right hand done as she was right-handed.

Upon questioning by her attorney, Timm testified that she went to a pain center for injections in her lower back and hip on the right side of her body. She stated that she went every three months for those injections. Timm then testified that about a year before the hearing she started falling more and losing her balance more so she discussed with one of her doctors, Dr. Michael F. Miniter, M.D., about the use of a cane. Timm testified that Dr. Miniter explained there was no sense in prescribing a cane if Timm already had one (she told him she had one). Timm also testified that she and her husband moved from a two-story to one-story house to get away from the stairs in the former house. She could walk short distances and then would have to sit down or stop.

She also stated that she had daily pain in her right side due to kidney problems, which also caused burning when she urinated. Timm explained that because of the type of disease she had, there was nothing that could really be done for it. Timm said there were days when her fibromyalgia caused her skin to burn so badly that she could not stand to have anything touch her. She testified to being

3

tired and not sleeping well at night. She said it was hard to lay or stay in one position for a long period of time, and, thus, she could go to sleep for an hour or so but then she would get up and sit in a chair for a while. She spent most of her time during the day either sitting in her recliner with her feet up or laying down to stretch out her back and hip. She took naps daily. Timm said her medicines did not cause any side effects or any problems for her. They took away some of the pain but not all of it, so that she could function "a little bit" through the day. AR 72.

Timm then testified about the jobs she had in the past including being a caregiver, an office clerk, a customer service clerk, and a mail handler. She said she could not perform her previous work as customer service clerk because she could no longer do the typing and writing all day. She said she could also not grasp products like she once did. Timm stated she could no longer do the job of engraver, pantograph as the job involved a lot of very fine hand work.

Timm's husband Douglas then testified. Douglas testified that Timm stopped working a number of years ago due to her illnesses and that she had gone downhill ever since. Her mobility was greatly limited, and they did not do much like they once did. He helped her with everyday things such as getting dressed, doing dishes, doing laundry, and getting groceries. He explained that Timm's fingers locked up so that she could not grasp anything. He said she complained of pain every day. She had problems with falling. Douglas also testified that if they were to go out and do anything during the day, then Timm would need up to three days to recover. Douglas was unable to hold Timm because her skin hurt her. Douglas said that Timm's condition became much worse over the last few years and particularly so within the last year. Douglas confirmed Timm's initial use of her grandmother's cane a year before and her current use of a better cane.

Finally, a VE testified.

## III

In his Decision, the ALJ determined that Timm had the following severe impairments: fibromyalgia; generalized arthritis; post left hand surgery; kidney disease; degenerative back disorder; and abdominal disorder. AR 23. The ALJ made the following residual functional capacity (RFC) finding:

> The claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: the claimant may not climb ladders, ropes, or scaffolds; the claimant can perform other postural functions occasionally; she cannot engage in overhead reaching; she can perform other manipulative functions frequently; and she must avoid workplace hazards such as unprotected heights and dangerous machinery.

AR 25.

In support of that RFC finding, the ALJ recounted Timm's and Douglas's hearing testimony. The ALJ also detailed Timm's medical records dated between October 2010 and October 2015. Those medical records provided that Timm underwent left trapezium excision surgery in April 2012 for her left first metacarpal joint osteoarthritis, she underwent numerous injections over the course of those five years, and she underwent medical imaging (MRI, CT scan, X-ray) during the relevant period. The records also provided that Timm's examinations revealed normal motor strength, normal sensation, normal gait, and full range of motion of the hands, wrists, elbows, shoulders, hips, and knees. Those same records indicated Timm had limited neck, ankle, and feet motion. Timm's medications (Voltaren gel, Lyrica, Trazodone, Tramadol, Cymbalta, Kenalog injections, Avapro, Butrans patch, hydrocodone), their side effects (if any), and their efficacy was noted throughout the ALJ's Decision. The instances in which physical therapy and exercise were suggested and a TENS unit was tried were also noted by the ALJ.

The ALJ exhaustively recited the medical records pertaining to Timm's hernia and hernia repair surgery as well as the procedure to remove mesh (which later caused Timm pain) that was used during the original hernia surgery. Dr. Melinda M. Hass, M.D.'s (Timm's doctor for her hernia repair) medical notes appear throughout the ALJ's Decision. The very last page of the transcript in this case includes a handwritten note from Dr. Hass in which she responded to Timm's counsel's request for clarification about any prescribed weight limit for Timm saying, "No permanent absolute weight limit restriction given but I did counsel her to lift only what she felt comfortable lifting and to limit if she experienced pain." AR 745.

The ALJ also discussed the medical records pertaining to Timm's treatment for her kidney disease. He referenced her complained-of symptoms, the tests she underwent, and the treatment she was prescribed for it. He noted the instances where her renal functions were stable.

With regard to her fibromyalgia, the ALJ referred to Timm's records which indicated she had 15/18 positive trigger points and which explained that her anthralgias and synovitis were suggestive of fibromyalgia. The ALJ detailed the instances Timm complained of all-over pain, tenderness to certain body parts, and generalized aching and morning stiffness. The ALJ also cited where in the medical records Timm reported she babysat for her grandchildren daily, was doing "good," "reasonably well," and was doing "fairly well." AR 27, 29, 30, 316, 539, 610.

The ALJ summarized Timm's October 2013 medical notes as follows:

> In October 2013, the claimant presented to Dr. Miniter for a follow up of arthritis and fibromyalgia. She reported her Cymbalta was helping to some degree, and she was functioning well at that time but had some pain. She was quite active at home. She had minimally tender PIP joints and CMF joints. She had good motion of the wrists and

6

shoulder. She had limited neck motion and limited low back motion. She had good motion of the knee with tenderness and no tenderness to the feet and toes. She had improved with Cymbalta and her pain was controlled with Voltaren gel and tramadol. She should continue medications.

AR 29. Timm's October 2014 medical record was summarized as follows:

> In October 2014, the claimant presented to Dr. Hass for a follow up after her hernia repair. She was doing well with no complaints. She was very happy that her right sided abdominal pain was basically completely gone; she had some incisional pain when she did vigorous activity. The operation was successful. The doctor assessed she was doing very well overall (Exhibit 13F, 6).

AR 29.

After reciting the relevant medical records, the ALJ concluded that Timm's allegations of complete and total disability could not be fully accepted where, among other things, the "record [did] not demonstrate clearly that she has the significantly limited range of motion, muscle spasms, muscle atrophy, motor weakness, sensation loss, difficulty ambulating, or reflex abnormalities which are associated with intense and disabling pain." AR 30. The ALJ went on:

> Additionally, her claims of extremely limited functional capacity are not demonstrated by the medical records. The claimant has been generally noted to have normal motor strength; normal sensation; a normal gait; full range of motion of the bilateral hands/fingers . . .; full range of motion of the hands, wrists, elbows, shoulders, hips, and knees . . .; no limitation of mobility; normal reflexes . . .; and no weakness in the upper or lower extremities . . . .

AR 30-31.

The ALJ also concluded that Timm was treated "conservatively" for her fibromyalgia, arthritis, and back pain. In support of that conclusion, the ALJ highlighted the pertinent medical records, Timm's own representations as to how effective her treatments were, and her representations about being "quite active"

7

at home and engaging in "vigorous activity." AR 31. Later in his Decision, the ALJ summarized:

> [T]he medical record does not document ongoing, disabling pain that the claimant alleges as the claimant's physical examinations and imaging studies have not found significant deficits, and her treatment has been successful in treating the symptoms.

AR 32. Finally, the ALJ considered Timm's daughter's, Kristina Begyn's (Kristina), submitted statements[3], Dr. Hass's opinion regarding Timm's weight limit restrictions, and the State Agency opinions of record.

## IV

Timm argues: 1) the ALJ erred in requiring specific medical evidence that is not applicable to Timm's impairments; 2) the ALJ improperly dismissed Timm's allegations of pain when he erroneously found she had only obtained conservative treatment; 3) the ALJ erred in dismissing Dr. Hass's opinion and Timm's testimony without properly considering the factors required by law; and 4) the ALJ failed to appropriately consider or discuss lay witness opinions.

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir.

---

[3] Kristina's 11/3/2013 Function Report – Adult – Third Party provided that, among other things, her mother was often in pain, could not stand for long periods of time, and tired easily. AR 250. Kristina also stated that her mother could no longer stand, lift, or walk compared to before her illnesses/conditions, her mother could not do house or yard work because those activities caused her pain, and her mother experienced pain when she did any physical activity for any duration longer than "short." AR 253, 255. Lastly, Kristina remarked that her mother was always fun loving and up for anything though "now she is riddled with chronic pain . . . ." AR 257.

8

2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971), *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 404.1566 (1986). The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 404.1520. In the following order, the ALJ must evaluate whether the claimant:

1) currently performs or, during the relevant time period, did perform any substantial gainful activity;

2) suffers from an impairment that is severe or whether a combination of her impairments is severe;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

> 5) is unable to perform any other work existing in significant numbers in the national economy.

*Id.* An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled. A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. *Garfield v. Schweiker*, 732 F.2d 605 (7th Cir. 1984).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Tom v. Heckler*, 779 F.2d 1250 (7th Cir. 1985); *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).

In the instant case, Timm claims error on the ALJ's part at Step Four.

## A

Timm's first two arguments – that the ALJ erred in requiring specific medical evidence that is not applicable to Timm's impairments and that the ALJ improperly dismissed Timm's allegations of pain when he erroneously found she had only obtained conservative treatment – amount to a challenge to the ALJ's determination that Timm's pain assertions lacked credibility. Timm argues, in particular, that the ALJ erroneously dismissed her pain complaints because she lacked symptoms which are not even indicative of fibromyalgia, dismissed objective evidence of osteoarthritis, and dismissed Timm's treatment as merely "conservative." Timm also argues that the ALJ misconstrued her daily activities. The Commissioner counters that the ALJ gave numerous reasons for finding that the record did not fully support Timm's subjective allegations including the objective medical evidence, Timm's testimony as compared to the findings reflected in the medical records, Timm's treatment history, and Timm's daily activities.

In this case, the ALJ issued his Decision before the Social Security Administration issued Social Security Ruling 16-3p which supersedes SSR 96-7p. The new SSR directs the ALJ to focus on the "intensity and persistence of the applicant's symptoms" rather than on "credibility." *Schuck v. Berryhill*, No. 16 C 5936, 2017 WL 2798390, at *5 (N.D. Ill. June 28, 2017), *quoting Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016). Because SSR 16-3p only clarifies the SSA's interpretation of existing law, that new ruling applies to Timm's arguments in this case. *Schuck*, 2017 WL 2798390, at *5. SSR 16-3p still requires the ALJ to consider factors in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms including testimony, objective medical treatment, medication and its side effects, non-medication treatments, daily activities, and any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g. standing for 15 to 20 minutes every hour). *Id*., *citing* SSR 16-3p, 2016 WL 1119029, at *4-7. Ultimately, "administrative law judges will continue to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole*, 831 F.3d at 412 (emphasis in original).

The ALJ did as was required of him under SSR 16-3p and explicitly considered Timm's testimony, objective medical records, her medications and their side effects, her use of other measures to relieve pain, and her daily activities. As a result, it is clear that the ALJ considered simultaneously all of Timm's impairments in his Decision and thus considered the medical evidence pertaining to *both* Timm's fibromyalgia and her other severe impairments. Those symptoms Timm lacked and which the ALJ noted in support of his RFC finding were properly noted in Timm's case where she had other severe impairments including generalized arthritis, post left hand surgery, kidney disease, degenerative back disorder, and abdominal disorder. AR 23. Timm would have this Court review the ALJ's Decision through the lens of fibromyalgia only, but this Court, on the other hand, is tasked with considering the ALJ's Decision as a whole. *See Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004) (explaining that a

court will give an ALJ's opinion a commonsensical reading rather than nitpicking at it).

Timm also fails to point out in the ALJ's Decision where he "dismissed" objective evidence of osteoarthritis. Though the ALJ did not expressly recite those parts of the medical record which indicated Timm had Heberden's and Bouchard's nodes, the ALJ did identify other parts of that same medical record which indicated Timm had full range of her hands but also osteoarthritis of the thumbs and feet. *See, e.g.,* AR 27. Likewise, the fact that the ALJ identified Timm's treatment for fibromyalgia, arthritis, and back pain as "conservative" does not doom the ALJ's determination that Timm's allegations of complete and total disability could not be fully accepted.

As the Commissioner points out, the ALJ made the conservative treatment finding in connection with Timm's treatment for those three particular severe impairments, and the ALJ did not characterize Timm's left hand or hernia surgeries as "conservative." The ALJ provided more than just a glimpse into his reasoning that, on balance, Timm's treatment had been conservative where he further stated:

> [N]o surgery has been recommended given that her doctor noted that MRI was [sic] unremarkable for any high grade stenosis, herniation, or severe nerve impingement . . . [Timm] also declined to go to physical therapy [], which is not consistent with someone experiencing ongoing and disabling pain. Further, she has reported the Lyrica was effective in relieving her pain [], and later reported that Cymbalta was helping, she was functioning well, and was "quite active" at home []. Her doctor assessed her pain was controlled with Voltaren gel and tramadol []. As recently as early 2015, she reported 50% relief with the abdominal steroid injection, 60% relief with the Butrans patch [], and 75% relief from her SI joint injection [] . . . .

AR 31. *See Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) (stating that an ALJ's analysis "must provide some glimpse into the reasoning behind his decision to deny benefits"). Elsewhere in his Decision, the ALJ discussed the medical records of Timm's left hand surgery, hernia surgery, and hernia repair surgery as well the many

12

times Timm was prescribed different medications for her ailments and her subjective reports of how well those medications worked. The ALJ also detailed the other treatment Timm attempted including a TENS unit trial. A close reading of the ALJ's Decision reveals that the ALJ did not shy away from detailing the true extent of Timm's treatment where he noted Timm's repeated receipt of injections, repeated medication refills, and repeated attempts to try different medication combinations.

To the extent that the parties dispute whether the ALJ correctly used the term "conservative" to define Timm's treatment under 7th Circuit case law, any understatement of her treatment was harmless in light of the ALJ's Decision as a whole. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) (explaining that administrative error may be harmless and thus a court ought not remand a case to the ALJ where it is convinced that the ALJ would reach the same result). Throughout the rest of the ALJ's Decision, he abided by SSR 16-3p given that he addressed Timm's objective medical treatment, her medications and their side effects, and her daily activities.

With regard to her daily activities, Timm suggests that the ALJ misconstrued the record because the ALJ recited medical records noting Timm engaged in "vigorous activity" and was "quite active" while failing to detail the other parts of those same records. However, this is not a case in which the ALJ cherry picked the record to support his ultimate decision that Timm was not disabled. The October 2013 medical record which included the note that Timm was "quite active" also included objective indications of good motion in some parts of her body, limited motion in others, and minimally tender PIP joints and CMF joints – all of those notes the ALJ recited, not simply that Timm was "quite active." AR 29, 477. While the ALJ did not recite that part of the October 2013 record which indicated Timm's subjective complaints about morning stiffness and poor energy, the ALJ elsewhere in his Decision detailed an April 2014 medical record in which Timm reported morning stiffness. The October 2014 medical record cited by the ALJ in

which Timm reported pain with more "vigorous activity," also included Timm's report that she was "doing well with no complaints." AR 613. Both of those notes the ALJ recited.

Certainly, there was more information contained within the October 2013 and October 2014 medical records and the various other medical records that the ALJ did not explicitly detail. So, too, did the record contain more of Timm's representations of what activities caused her pain (which she cites in her Motion for Summary Judgment). "But an ALJ need not mention every piece of evidence, so long as he builds a logical bridge from the evidence to his conclusion." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). The ALJ did so here. He did not limit his discussion of the medical and other evidence to that which showed only what Timm could do without pain or without difficulty. The Court therefore can trace the path of the ALJ's reasoning in reaching his conclusions that the record did not clearly demonstrate Timm had intense and disabling pain and that the medical records did not demonstrate Timm had extremely limited functional capacity. AR 30.

**B**

Timm also argues that the ALJ failed to consider the factors required by 20 C.F.R. § 404.1527 when he rejected Dr. Hass's opinion. She attempts to bolster that argument by pointing out that the ALJ did not properly consider Timm's testimony to be consistent with Dr. Hass's opinion. The Commissioner counters that even if the ALJ determined Dr. Hass's opinion was due controlling weight, it does not follow that the ALJ's RFC determination would change as Dr. Hass's opinion was consistent with a limitation to light work.

Though an ALJ must give controlling weight to the medical opinion of a treating physician, the ALJ must do so only if the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence." *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008), *citing Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006); 20 C.F.R. § 404.1527(c)(2). If the ALJ does not give a treating physician's

opinion controlling weight, the Social Security regulations require the ALJ to consider: 1) the length, nature, and extent of the treatment relationship; 2) the frequency of examination; 3) the physician's specialty; 4) the types of tests performed; 5) and the consistency and supportability of the physician's opinion. 20 C.F.R. § 404.1527; *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009).

Here, Timm highlights that Dr. Hass "opined" that she was limited to activities "as tolerated." The ALJ addressed Dr. Hass's opinion in this regard, stating:

> The undersigned has considered the opinion of Dr. Hass, who performed the claimant's hernia surgeries; she stated the claimant has no permanent absolute weight limit restrictions, but was advised to lift only what she felt comfortable lifting and to avoid lifting if she felt pain (Exhibit 19F, 2). *This has been considered but it is noted the doctor does not offer any specific lifting limitation*. The undersigned finds a limit to light work is appropriate given her pain and hernia surgeries.

AR 32 (emphasis added). Timm's argument is somewhat of a nonstarter, where, as the ALJ made clear in his Decision, Dr. Hass did not even offer any specific lifting limitation and otherwise deferred to Timm's own judgment to lift only what she felt comfortable lifting and to avoid lifting if she felt pain. AR 745. The Commissioner thus correctly argues that any error should be considered harmless because Dr. Hass's opinion does not conflict with the ALJ's determination that Timm could perform a reduced range of light work; that determination was premised, at least in part, upon the ALJ's consideration of Timm's pain assertions. The Court already determined, *supra*, that the ALJ adequately and properly considered the intensity and persistence of Timm's symptoms. For that reason, Timm's remaining points in support of her argument that the ALJ did not properly consider Dr. Hass's opinion fail as well.[4]

## C

Finally, Timm argues that the ALJ's failure to discuss Douglas's testimony and Kristina's statement prevents the Court from performing a proper review of the ALJ's

---

[4] Timm's remaining points about Dr. Miniter and cane use, Dr. Dolphin and back surgery, and Dr. Miniter and symptomatic hands amount to a "throw it at the wall and see what sticks" type of argument.

Decision. The Commissioner argues the ALJ reasonably did not accept Kristina's statements where he concluded that they were not consistent with the objective medical record, Timm's actual activities, and Timm's physical examination findings. The Commissioner also argues that the ALJ's Decision demonstrated that he sufficiently considered Douglas's testimony.

The ALJ did not fail to appropriately consider or discuss those lay witness opinions. In his Decision, the ALJ summarized Douglas's testimony:

> The claimant's husband Douglas Timm testified he has been married to the claimant for ten years. He stated she stopped working a number of year [sic] ago, and her mobility is very limited. He stated he helps her with everyday things such as dressing and doing laundry. He stated her fingers lock up, she cannot grasp, or hand [sic] onto things. She companies [sic] of pain and has difficulty with stairs. She has fallen recently and does not go anywhere. She does not shop because she cannot carry groceries. If they do anything during the day, it takes her three days to recover. Her condition has been progressing in the last few years, especially this last summer.

AR 26. Clearly, Douglas's testimony was much the same as his wife's testimony during the hearing. Therefore, the ALJ committed no error by failing to specifically discuss the weight given Douglas's testimony where the ALJ's discussion of Timm's own testimony was more than sufficient under the relevant authority (as detailed above). *See Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (ALJ did not ignore an entire line of evidence where he explicitly addressed the claimant's testimony but not the claimant's wife's testimony which was essentially redundant). In considering Kristina's statement, the ALJ stated:

> The undersigned has also considered the statement of Kristina Begyn, the claimant's daughter (Exhibit 5E). For the reasons discussed above as to finding the claimant's statements to be less than fully credible, the undersigned finds her statements concerning the intensity, persistence and limiting effects of the claimant's symptoms are not consistent with the objective medical record, the claimant's actual activities, and her physical examination findings, and are therefore not credible to the extent they are inconsistent with the above residual functional capacity assessment.

AR 32. Kristina's statements were strikingly similar to her mother's and Douglas's testimony and accordingly, the ALJ did not err by failing to explicitly discuss the content of it. *See Carlson*, 999 F.2d 181. Ultimately, any error that the ALJ may have committed in failing to specifically discuss these lay witnesses' opinions is harmless, as the ALJ's Decision on the whole is supported by substantial evidence and the record evidence was assessed correctly under the relevant regulations and authority. *Delgado*, 782 F.2d at 82; *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (the Commissioner's findings will be reversed only if not supported by substantial evidence or if the Commissioner applied an erroneous legal standard).

## V

For the foregoing reasons, the Plaintiff's Motion for Summary Judgment (Doc. 10) is DENIED and the Commissioner's Motion for Summary Affirmance (Doc. 13) is GRANTED. This matter is now terminated.

*It is so ordered.*

Entered on November 3, 2017.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE